FILED IN OPEN COURT
U.S.D.C. Atlanta

JUN 1 7 2013

James N. Hatten, Clerk
By: _Donald Smith_
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

    *v.*

AARON BLAKE BUCKLEY,
DAVID LEE, AND
GARY EDWIN SHARP II, A.K.A.
GARY EDWIN SHARP JR.

Criminal Indictment

No.   **1:14 CR 0227**

THE GRAND JURY CHARGES THAT:

## COUNT 1
### (Conspiracy)

1.    From in or about May 2010, through on or about August 21, 2012,
the exact dates being unknown, in the Northern District of Georgia and
elsewhere, defendants AARON BLAKE BUCKLEY, DAVID LEE, and GARY
EDWIN SHARP II, did willfully, knowingly and unlawfully combine, conspire,
confederate, agree and have a tacit understanding with G.R. and others known
and unknown to the Grand Jury, to commit certain offenses against the United
States, including the following:

(a) to willfully, and for purposes of commercial advantage and private
financial gain, infringe copyrights by reproducing and distributing,
during a one hundred and eighty (180) day period, at least ten (10)
copies of one (1) or more copyrighted works having a total retail value

1

of more than $2,500 in violation of Title 17, United States Code, Section

506(a)(1)(A), and Title 18, United States Code, Sections 2319(b)(1) and 2;

and

(b) to willfully, and for purposes of commercial advantage and private

financial gain, circumvent a technological measure that effectively

controls access to a work protected under Title 17 of the United States

Code, in violation of Title 17, United States Code, Sections 1201(a)(1)(A)

and 1204(a).

## Background

2.      It is relevant to this Indictment that, during the time period relevant

to this conspiracy:

a.      Defendant BUCKLEY operated an alternative online market,

called "Applanet," for the purpose of reproducing and distributing pirated

copies of Android mobile device software applications (or "apps") to

Applanet users in the Northern District of Georgia and elsewhere, and for

purposes of commercial advantage and private financial gain through

advertising revenue. Defendant BUCKLEY was responsible for operating

servers that hosted database content for Applanet operations, as well as

servers that hosted the Applanet group's pirated copies of copyrighted

apps and web content for Applanet, under the web domain

2

"www.applanet.net."  Defendant BUCKLEY was also responsible for managing the advertising revenues and finances for Applanet.

b.     Defendant LEE was primarily responsible for providing coding services and system administration for the Applanet group.  For example, defendant LEE wrote the computer code for later versions of the Applanet application, or Applanet app, necessary to distribute pirated copies of apps to Applanet users' Android mobile devices.  Defendant LEE was also responsible for obtaining pirated copies of copyrighted Android apps for Applanet's computer servers, and then using a computer program to circumvent and remove ("crack") the apps' technological protection measures designed to control access to, or copying of, the apps.  Defendant LEE then copied and uploaded the cracked apps to Applanet's computer servers without permission from the copyright owners.

c.     Defendant SHARP was primarily responsible for administering and taking on the role of "super moderator" on Applanet's servers and Applanet's Facebook page.  In this role, defendant SHARP reviewed postings by site users and responded to requests from software developers to remove unauthorized copies of their copyrighted apps from the Applanet website.

d.      Conspirator G.R. was primarily responsible for updating the Applanet website and for taking on the role of "moderator" for Applanet's accounts with Facebook, Twitter, and Tinychat.  In this role, conspirator G.R. posted status updates to Applanet's official Facebook page.

<u>Manner and Means</u>

3.      The manner and means by which the conspiracy was carried out included, but were not limited to, the following:

a.      The object of the conspirators' illegal agreement was to unlawfully obtain, reproduce, and distribute copies of copyrighted works, namely, Android mobile device apps, through an alternative online market called "Applanet," without permission from the software developers and other owners of these copyrighted works, who would otherwise sell lawful copies of the apps on legitimate Android online markets for a fee to the general public.

b.      It was a part of the conspiracy to obtain by various means copies of the aforementioned apps and then to circumvent or remove ("crack") any technological protection measures controlling access to, or copying of, the copyrighted software for the apps.  For example, defendant LEE obtained copies of apps from defendant BUCKLEY and from Applanet users who had posted copies of the apps to Applanet's online

4

forum.  Defendant LEE then cracked such access controls or copy controls on authorized copies of the apps, and did so without permission from the copyright owners of the apps.  After cracking the apps, defendant LEE uploaded copies of the cracked apps on to Applanet's computer servers. Other conspirators reproduced and obtained over the Internet copies of apps that were already "cracked" by others – also without permission from the copyright owners.

c.      It was further a part of the conspiracy to rent computer servers, including servers located in Atlanta, Georgia, elsewhere in the United States and in the Netherlands, to host one or more websites, including "www.applanet.net," and to provide digital storage for pirated copies of copyrighted apps to allow conspirators to upload, download, store, and ready pirated copies of copyrighted Android apps for distribution to Applanet users.

d.      It was further a part of the conspiracy to pay for and to register Internet domain names for use by Applanet users, including www.applanet.net.

e.      It was further a part of the conspiracy to distribute pirated copies of the apps to Applanet users without authorization from the copyright owners.  Defendant LEE created updated versions of an

Applanet app that Applanet users could download to their Android mobile devices.  Through the Applanet app, conspirators could distribute copies of the pirated apps from Applanet's computer servers directly to Applanet users' Android mobile devices.

f.      It was further a part of the conspiracy for defendant BUCKLEY to use PayPal and other bank accounts to receive on behalf of Applanet (1) income generated from online advertisement services, including AdSense and/or AdMob, on www.applanet.net and (2) donations from Applanet users.  For example, between September 8, 2010 and January 1, 2011, defendant BUCKLEY received at least $13,681.87 in donations from Applanet users.  And between November 16, 2010 and February 16, 2011, defendant BUCKLEY received at least $9,500 in advertising revenue from AdMob.

g.      It was further a part of the conspiracy to promote Applanet as a one-stop alternative market for users to obtain for free copies of apps for which consumers would otherwise have to pay a fee.  For example, in August 17, 2012, the website www.applanet.net included the following statements:

> "Access Paid Apps for FREE!
> Applanet's massive database contains more than 15,000
> Android applications.  You have access to the latest
> version of both free and paid applications found in the

Android Market and even some you can't find and will not need to pay anything! Applanet is your one-stop alternative app market. . . . Each user has the ability to rate and leave a comment about apps that they have downloaded and installed from Applanet."

h.    During and as a part of the conspiracy, the conspirators distributed over four million (4,000,000) copies of copyrighted apps, with a total retail value of over $17 million, to Applanet users and others, in the Northern District of Georgia and elsewhere, all without authorization from the software developers and other copyright owners of the apps.

## Overt Acts

4.    In furtherance of this conspiracy, and to effect the objects and purposes thereof, defendants and their co-conspirators committed the following overt acts within the Northern District of Georgia and elsewhere, including but not limited to the following:

a.    On or about May 5, 2010, defendant BUCKLEY created the Twitter account ApplanetDev.   The description associated with the Twitter account was "Applanet is an exact replica of the android market. Get free paid apps.  Directly on your phone!"

b.    On or about May 7, 2010, defendant BUCKLEY posted a solicitation for work on the website vworker.com, a.k.a. Rent-A-Coder, for a developer to code an Android application that was described as: "Like

7

the Android market," and "An alternative android marketplace for free apps." In his solicitation, defendant BUCKLEY included screen shots of layouts showing how he wanted the application to look. Defendant BUCKLEY's solicitation also stated: "It'll be an alternative android marketplace for free apps.. You are being payed so don't ask questions.."

c.   Starting on or about May 7, 2010, defendant BUCKLEY began communicating with a developer, conspirator C.F., in the United Kingdom, who agreed to develop the first version of the Applanet Android app.

d.   On May 19, 2010, defendant BUCKLEY registered for an account with AdMob.

e.   On May 23, 2010, defendant BUCKLEY registered and paid for the domain name applanet.net with the domain registrar GoDaddy. The domain was paid for using a PayPal account in his mother's name.

f.   On or about May 26 2010, defendant BUCKLEY transferred $1,000.00 from the PayPal account registered to "bellasbiatch@yahoo.com" to an escrow account maintained by Rent-A-Coder for the Applanet Android app.

g.      On or about June 6, 2010, defendant BUCKLEY ordered a virtual private server from hosting provider Hostgator. The domain assigned to the server was applanet.net.

h.      Between June 6, 2010 and January 2012, defendant BUCKLEY paid Hostgator $1911.63 for hosting services provided to the Applanet group.

i.      On or about June 15, 2010, defendant LEE created an account named "TheBuzzer" on the Applanet online forums.

j.      On June 25, 2010, defendant BUCKLEY signed up for traffic analytics services, provided by tracemyip.org, to be used on applanet.net.

k.      On July 7, 2010, defendant BUCKLEY paid for monthly hosting fees associated with applanet.net to the provider CCI Hosting.

l.      On September 9, 2010, defendant LEE posted an online statement entitled: "I might be able to crack apps that goes online to check if you bought it or not." In the posting, defendant LEE stated, "If you guys have certain apks [software files for apps] that needs to be cracked. Post them somewhere, I will see if I can crack it."

m.      On September 28, 2010, defendant LEE posted on the Applanet forums the following comment: "i just cracked overkill, not that hard to crack, i bypass all the parts that check for account."

9

n.      On October 13, 2010, defendant LEE posted a thread to Applanet's online forums entitled, "Bypassing google license check a easy way." In the posting, defendant LEE details a method for bypassing an app's license check that is designed to control access to the app.

o.      On October 29, 2010, defendant BUCKLEY paid $195.00 to vBulletin Solutions for a license to the vBulletin Forums software used on applanet.net.

p.      On or about November 14, 2010, defendant BUCKLEY leased a dedicated server with the server hosting provider Tenamax using the account name "applanet." Tenamax is a reseller of services provided by GNAX, an internet service provider based in Atlanta, Georgia.

q.      Between November 14, 2010 and February 2011, defendant BUCKLEY paid Tenamax $2463.96 for hosting.

r.      On or about December 16, 2010, defendant BUCKLEY paid $325.99 for monthly service of a leased server with Tenamax for applanet.net.

s.      On December 18, 2010, defendant BUCKLEY created a Facebook group page for Applanet.

t.      On or about January 18, 2011, defendant BUCKLEY paid $580.00 for the first month of service for an additional dedicated server with Tenamax.

u.      On January 19, 2011, defendant BUCKLEY posted the following tweet to the Applanet twitter feed: "tinychat was fun. ON A SIDE NOTE WE GOT OUR NEW SERVER! http://www.speedtest.net/result/1118647147.png OUR SPEEDTEST. Now we wait on buzzer [defendant LEE] to get here so he can transfer the files with his super duper industrial internet. lol."

v.      On a date unknown, but no later than February 1, 2011, defendant SHARP created an account on Applanet.net.

w.      On February 1, 2011, defendant BUCKLEY gave defendant SHARP "super moderator" privileges on Applanet's online forums.

x.      On February 3, 2011, defendant LEE released a new version of the Applanet app (version 2.7.6).

y.      On February 3, 2011, conspirator J.J. tested the new Applanet app and informed defendant LEE that it worked properly.

z.      On February 7, 2011, conspirator G.R. created an account on the Applanet forums under the user name "taekfang."

11

aa.    On or about February 17, 2011, defendant BUCKLEY paid

$580.00 for monthly service for a leased server with Tenamax.

bb.    On February 26, 2011, defendant LEE provided defendant

BUCKLEY with a new Applanet app to be distributed to Applanet users.

cc.    On February 26, 2011, defendant BUCKLEY informed

defendant LEE that he made "taekfang" (conspirator G.R.) a "perm mod."

(permanent moderator) for Applanet.

dd.    On March 2, 2011, BUCKLEY posted the following online

message seeking new web hosting services:

> "Our server has been null routed due to warez content
> we are looking for a replacement we transfer between 5
> - 15 tbs a day if your interested please contact me on the
> forums when its actually up. But on a sidenote since we
> have installed a mirror system they are probably going
> to give the servers back so we can remove the apks
> which we wont have to worry about anymore with the
> new mirror system. But still interested in other servers
> ^_^. Still. WIN For the pirates :) fail for whoever
> reported it. They are about to give it back so we can
> start removing the apks from the server. So in the future
> itll all be uploaded to our 5 mirrors. When one goes
> down itll replace with another mirror. and when those
> go down we'll make it replace those mirrors with other
> mirrors. Complicated system."

ee.    On March 2, 2011, defendant BUCKLEY contacted an internet

hosting provider in the Netherlands called Alibaba with the following

inquiry:

12

"Hi i run applanet.net which is android paid apks for free. And we have an app and thats what we will be running off our servers. I was wondering if someone complained such as a developer would you take us down or let us keep going? If you let us keep going i cant wait to buy your netherlan 300. . . . I am talking to a friend and they said that you would fold? Even if they threaten lawyser you would stay up?"

In response the next day, the provider advised defendant BUCKLEY: "Hi, To be clear we ignore most of DMCA [Digital Millennium Copyright Act] complaints. So don't worry about them. Thanks."

ff.    On March 4, 2011, defendant BUCKLEY purchased a dedicated server located in the Netherlands from the internet hosting provider Alibaba, a.k.a. Myoffshoreservers.com.

gg.    Between March 4, 2011 and July 2011, defendant BUCKLEY paid $1749.92 for internet hosting through Alibaba.

hh.    On March 4, 2011, defendant BUCKLEY paid $349.65 via a PayPal account in the name of Jennifer Buckley to Myoffshoreservers.com.

ii.    On March 10, 2011, an FBI undercover employee who was also an Applanet user, in the Northern District of Georgia, downloaded 1289 copies of pirated apps from Applanet's computer servers.

jj.    On March 10, 2011, defendant BUCKLEY paid Nicholas Narbone $500.00 via PayPal for internet hosting services.

kk.     On March 11, 2011, defendant BUCKLEY paid Narbone $600.00 via PayPal for internet hosting services.

ll.     On April 1, 2011, an FBI undercover employee who was also an Applanet user, in the Northern District of Georgia, downloaded 1298 copies of pirated apps from Applanet's computer servers.

mm.   On April 14, 2011, an FBI undercover employee who was also an Applanet user, in the Northern District of Georgia, downloaded a copy of the pirated SlingPlayer app from Applanet's computer servers.

nn.    On April 23, 2011, defendant BUCKLEY paid $349.65 via PayPal to Justoffshorehost.com, previously known as Myoffshoreservers.com.

oo.    On or about April 26, 2011, defendant BUCKLEY entered into an agreement with Nicholas Narbone to merge Applanet with Narbone's alternative app market known as Appbucket.

pp.    On May 10, 2011, defendant SHARP stated in an online chat that he used to administer all the Applanet servers until the merger discussions between Applanet and Appbucket began.

qq.    On a date unknown, but at least by May 16, 2011, conspirator G.R. was given moderator privileges and took a moderator role with Applanet on Facebook, Twitter, and Tinychat.

rr.     Between May 16, 2011 and continuing until at least August 14, 2011, conspirator G.R. posted online status updates to Applanet's official Facebook page using the official Applanet user account.

ss.     On May 18, 2011, an FBI undercover employee who was also an Applanet user, in the Northern District of Georgia, downloaded 1443 copies of pirated apps from Applanet's computer servers.

tt.     On June 5, 2011, in an online chat, defendant SHARP responded to an offer of hosting services by inquiring if the provider will ignore DMCA complaints.

uu.     On June 21, 2011, defendant BUCKLEY made defendant SHARP an administrator on the Applanet Facebook page.

vv.     On July 16, 2011, conspirator G.R. posted the following status updates to Applanet's Facebook page: "Please note that we are currently allowing uploaders to update the database, so that when Mr. Applanet devices to release 2.9- We will have apps that are close to the latest version possible."

ww.     On January 6, 2012, an FBI undercover employee who was also an Applanet user, in the Northern District of Georgia, downloaded 3642 copies of pirated apps from Applanet's computer servers.

xx.    On February 2, 2012, an FBI undercover employee who was also an Applanet user, in the Northern District of Georgia, downloaded 1217 copies of pirated apps from Applanet's computer servers.

yy.    On May 7, 2012, an FBI undercover employee who was also an Applanet user, in the Northern District of Georgia, downloaded 1179 copies of pirated apps from Applanet's computer servers.

zz.    On May 9, 2012, an FBI undercover employee who was also an Applanet user, in the Northern District of Georgia, downloaded 870 copies of pirated apps from Applanet's computer servers.

aaa.   On or about August 13, 2012, defendant BUCKLEY paid $295.40 for internet hosting through Alibaba for the period between August 19, 2012 and September 18, 2012.

All in violation of Title 18, United States Code, Section 371.

16

## COUNT 2
(Criminal Copyright Infringement)

5.      From on or about November 20, 2010, through on or about May 18,

2011, in the Northern District of Georgia and elsewhere, defendant DAVID LEE

aided and abetted others, who willfully and for the purpose of private financial

gain did infringe copyrights by reproducing and distributing during a one

hundred and eighty (180) day period ten (10) or more copies of one (1) or more

copyrighted works, namely copyrighted mobile device software applications (or

"apps"), with a total retail value of more than $2,500.

All in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18,

United States Code, Sections 2319(b)(1) and 2.

## COUNT 3
(Criminal Copyright Infringement)

6.     From on or about May 1, 2012, through on or about August 21, 2012,

in the Northern District of Georgia and elsewhere, defendant AARON BLAKE

BUCKLEY willfully and for the purpose of private financial gain, did infringe

copyrights by reproducing and distributing during a one hundred and eighty

(180) day period ten (10) or more copies of one (1) or more copyrighted works,

namely copyrighted mobile device software applications (or "apps"), with a total

retail value of more than $2,500.

All in violation of Title 17, United States Code, Section 506(a)(1)(A) and Title 18,

United States Code, Sections 2319(b)(1) and 2.

## FORFEITURE

7.    Defendants AARON BLAKE BUCKLEY, DAVID LEE, and GARY EDWIN SHARP II, if convicted of any of the violations alleged in counts one through three of this indictment, shall forfeit to the United States as part of the sentencing and pursuant to Fed. R. Crim. P. 32.2:

a.    Respecting count one, any real or personal property constituting and derived from proceeds obtained directly or indirectly as a result of, or traceable to, the violation of Title 18, United States Code, Section 371, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c);

b.    Respecting counts two through three:

i.    any article trafficked in and made in violation of Title 17, United States Code, Sections 506(a)(1)(A), and Title 18, United States Code, Sections 2319(b)(1), pursuant to Title 18, United States Code, Section 2323(a) & (b);

ii.    any property used, and intended to be used, in any manner or part to commit and to facilitate the violation of Title 17, United States Code, Sections 506(a)(1)(A), and Title 18, United States Code, Sections 2319(b)(1), pursuant to Title 18, United States Code, Section 2323(a) & (b); and

iii.    any property constituting, and derived from, any proceeds obtained directly or indirectly as a result of, or traceable to, the violation of Title 17, United States Code, Sections 506(a)(1)(A), and Title 18,

19

United States Code, Sections 2319(b)(1), pursuant to Title 18, United States Code, Section 2323(a) & (b); and

      c.    Any other property belonging to the defendants, up to the value of the property subject to forfeiture, if any property subject to forfeiture: (a) cannot be located upon the exercise of due diligence; (b) has been transferred to, sold to, or deposited with a third person; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be subdivided without difficulty.

      8.    The property subject to forfeiture under paragraph 7 includes, but is not limited to the following property:

Samsung Laptop Computer Serial Number HR3491VC300799T

Cybogx Desktop Tower Serial Number 6EAE-DOB6-EE24-7C4A

Acer Laptop Computer Serial Number LUSAL0D308950323BB1601

1 PNY 2 GB Flash Drive seized on August 21, 2012

1 PNY 4 GB SD-K04G seized on August 21, 2012

87 Assorted DVDs seized on August 21, 2012

1 Media Card Number 1029WW8227F

Samsung I500G cell phone IMEI Number A0000024FB12C9

Nokia Model 2610 Cell Phone with IMEI 011288/00/238722/1

Nokia Model 6340 Cell Phone with IMEI 01023500/704125/4

Seagate External Hard Drive 9ZH9P9RAA Serial Number NAILW3YA

I-Pad A1416 Serial Number DN6H7BAADJ8T

HP Tablet with no Serial Number seized on August 21, 2012

Seagate ST3200822AS Serial Number 4LJ21L56

Maxtor 6Y060L0422611 Hard Drive Serial Number Y2J727XE

Sony Ericson R800x Cell Phone Serial Number CB5AIE4F2M

Western Digital Storage Device Serial Number WXEY07755331

Seagate Portable Drive SRD00F1 Serial Number NA4G01XZ

SD Storage Device with no Serial Number seized on August 21, 2012

Samsung Laptop RC512 Serial Number HMC793HBA00561A

HP Laptop 2000 Serial Number 5CB1315N8W

All in accordance with Title 18, United States Code, Section 2323(a) & (b); Title 18, United States Code, Section 981(a)(1)(C), as incorporated by Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p).

A _____ *Teve* _____ BILL

_____ *Jdith Bass*
FOREPERSON

SALLY QUILLIAN YATES
*UNITED STATES ATTORNEY*

CHRISTOPHER C. BLY
*ASSISTANT UNITED STATES ATTORNEY*
Georgia Bar No. 064634
75 Spring Street, S.W., Suite 600
Atlanta, Georgia 30303   (404) 581-6000


LESLIE R. CALDWELL
*ASSISTANT ATTORNEY GENERAL*

JOHN H. ZACHARIA
*ASSISTANT DEPUTY CHIEF FOR LITIGATION*
District of Columbia Bar No. 456867
U.S. Department of Justice, Criminal Division
Computer Crime and Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C.  20530   (202) 305-2310

22